## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| STAN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| URBANA POLICE OFFICER COREY | ) | |
| PANKOW (#3374); URBANA POLICE | ) | |
| OFFICER COLBY WRIGHT (#3412); | ) | |
| URBANA POLICE OFFICER JONATHAN | ) | |
| YEAGLE (#3344); URBANA POLICE | ) | |
| OFFICER BRYAN FINK (#3331); | ) | JURY TRIAL DEMANDED |
| UNIDENTIFIED URBANA POLICE | ) | |
| OFFICERS, and THE CITY OF URBANA, | ) | |
| ILLINOIS, a municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES, Stan Brown ("Plaintiff"), by and through his attorneys, NATHAN &

KAMIONSKI LLP, and complaining of the Defendants, Urbana Police Officers Corey Pankow

(#3374), Colby Wright (#3412), Jonathan Yeagle (#3344), Bryan Fink (#3331), and unidentified

Urbana Police Officers (collectively "Defendant Officers"); and the City of Urbana, Illinois,

("Urbana"), and states as follows:

### INTRODUCTION

1.      This is an action for civil damages brought pursuant to 42 U.S.C. § 1983 to redress the

deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2.      On June 23, 2020, 63-year-old Stan Brown was senselessly tackled and beaten in the

hallway of his own building by Urbana police officers investigating a minor traffic collision.

Defendant Officers needlessly escalated the situation until Plaintiff was left bloody, bruised, and broken.

3.      Without a warrant or exigent circumstances, Defendant Pankow tackled Plaintiff to the ground, jumped on top of him, and along with Defendants Wright, Yeagle, and Fink, repeatedly and without justification struck Plaintiff in the back and head.

4.      This unjustified and excessive take down and beating left Plaintiff with a broken hand, severe pain, lacerations to his face and head, and other long-term injuries related to a decrease in hand-function.

5.      This photo shows only some of Plaintiff's injuries suffered as a result of the beating by Defendant Officers:



**JURISDICTION AND VENUE**

6.      This Court has federal question jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising out of state law.

7.     Venue is proper in the Central District of Illinois under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

## PARTIES

8.     At all times relevant hereto, Plaintiff Stan Brown was a resident of the State of Illinois and a citizen of the United States of America.

9.     At all times relevant hereto, Defendant Cory Pankow, was a resident of the State of Illinois and a citizen of the United States, acting under color of law in his capacity as a law enforcement officer employed by the Urbana Police Department (hereinafter "Urbana PD").

10.     At all times relevant hereto, Defendant Colby Wright, was a resident of the State of Illinois and a citizen of the United States, acting under color of law in his capacity as a law enforcement officer employed by the Urbana PD.

11.     At all times relevant hereto, Defendant Jonathan Yeagle, was a resident of the State of Illinois and a citizen of the United States, acting under color of law in his capacity as a law enforcement officer employed by the Urbana PD.

12.     At all times relevant hereto, Defendant Bryant Fink, was a resident of the State of Illinois and a citizen of the United States, acting under color of law in his capacity as a law enforcement officer employed by the Urbana PD. Defendants Pankow, Wright, Yeagle, and Fink are collectively referred to herein as "Defendant Officers".

13.     At all times relevant hereto, unidentified Urbana police officers were residents of the State of Illinois and citizens of the United States, acting under color of law in their capacity as law enforcement officers employed by the Urbana PD.

14.     Defendant City of Urbana, Illinois is an Illinois municipal corporation and is the legal

entity responsible for itself and the Urbana PD. Urbana is also the employer of Defendants and is

a proper entity to be sued under 42 U.S.C. § 1983.

## FACTS COMMON TO ALL COUNTS

15.     On or about the evening of June 23, 2020, Plaintiff was at home in his apartment when

Defendant Pankow arrive to investigate a minor traffic collision that occurred outside  Plaintiff's

apartment complex at 2018 Fletcher St., Urbana, Illinois.

16.     Prior to Defendant Pankow's arrival, Plaintiff was in the process of cooking dinner.

17.     Defendant Pankow was investigating a minor traffic violation in which Plaintiff was the

suspected driver.

18.     As part of his investigation, Defendant Pankow went to Plaintiff's unit number in the

apartment complex and knocked on the door. Plaintiff opened the door and admitted to being

involved in the minor traffic collision, thus ending Defendant Pankow's investigation.

19.     Having solved the mystery, Defendant Pankow then made a series of decisions to turn

this peaceful encounter into a dangerous situation which ended with Plaintiff suffering broken

bones.

20.     Defendant Pankow asked Plaintiff out of his apartment, where he was preparing a meal,

and down to the parking lot to draft a traffic citation. Plaintiff agreed and accompanied

Defendant Pankow to the parking lot.

21.     Once in the parking lot, Defendant Pankow did not proceed to write the citation, but

instead used his radio to communicate with other officers on a matter unrelated to the traffic

citation.

22.      Defendant Pankow gave no indication to Plaintiff how long they would be in the parking

lot; if Defendant Pankow was in the process of writing the citation; nor did he inform Plaintiff

that he was being detained while Defendant Pankow conducted any subsequent investigation.

23.       Plaintiff, concerned about the potential fire hazard he was creating by leaving food on a

hot stove, informed Defendant Pankow that he needed to return to his apartment. Plaintiff then

turned and walked back towards the door of his apartment building.

24.      After reaching the door and stepping inside the apartment building, Defendant Pankow,

without reason or justification, grabbed Plaintiff by the wrist and pushed him into a door-jam

before tackling Plaintiff from behind. Defendant Pankow then punched Plaintiff in the back of

the body and head, and pinned Plaintiff under his bodyweight.

25.      Defendant Pankow never told Plaintiff he was under arrest or detained, but instead

escalated a small traffic accident by using unnecessary force. Plaintiff was unarmed throughout

this entire encounter.

26.      Plaintiff was confused, scared, and in pain, while he repeatedly pled with Defendant

Pankow to stop. As if the senseless beating Plaintiff endured by Defendant Pankow was not

enough,  Defendant Officers Fink, Yeagle, and Wright  then arrived and continued to unlawfully

beat Plaintiff, striking his head, back, legs and arms.

27.      As a result of the beating at the hands of Defendant Officers, Plaintiff's wrist was broken.

Nevertheless, these defendants handcuffed Plaintiff's wrist in an unreasonably tight manner

which was calculated to inflict further pain on Plaintiff.

28.      Plaintiff complained to Defendant Officers that his handcuffs were too tight on his now-

broken wrist, but they willfully ignored these complaints with intentional disregard for Plaintiff's

pain.

29.     As a result of the beating described above, Plaintiff had blood pouring from his face, scrapes on his hands, arms, and knees, and a broken wrist.

30.     Due to the severity of Plaintiff's injuries, Plaintiff was taken to the hospital.

31.     As a result of this attack, Plaintiff suffered serious injuries to his face and body, including a facial laceration above his eye and a broken wrist.

32.     All of the above-described acts were committed by Defendant Officers intentionally and/or recklessly in disregard for Plaintiff's federally protected rights and were done pursuant to the preexisting widespread pattern and practice of Urbana of failing to properly train, supervise, and discipline its police officers.

33.     On April 10, 2020, bystander video captured a young woman, Aleyah Lewis, being punched in the head, subjected to a knee strike while lying prone, having her shoulder hyperextended, and otherwise subjected to extreme excessive force by Urbana police officers. Even though Mayor Diane Marlin herself described the video of this incident as "disturbing", Lewis was nevertheless criminally charged by Urbana police with resisting and obstructing in order to silence Lewis and cover up the misconduct of Urbana Police Officers who violated her Fourth Amendment rights.

34.     On April 20, 2020, the City Council of Urbana viewed the bystander video and was otherwise informed of the abuse Lewis endured at the hands of the Urbana Police Department, yet it condoned the excessive force by failing to take any action to discipline the officers involved.

35.     On April 27, 2020, Chief Bryant Seraphin presented to the City Council of Urbana a complete whitewash of a report on the Aleyah Lewis incident purporting to exonerate all of the officers involved. In this way, Chief Seraphin and the City Council of Urbana sent a clear

message to the Urbana Police Department that excessive force against citizens is encouraged and

will not be disciplined.

36.     With deliberate indifference to the rights of citizens to be free from excessive force by

police, Urbana has tolerated and encouraged a dangerous environment of police brutality.

37.     At all relevant times it was commonplace within the Urbana PD for its police officers to

arrest members of the public without probable cause and then to falsely charge those individuals

with no other crime besides a trumped-up charge of resisting/obstructing a peace officer.

38.     The Urbana Police Department has a broken excessive force review system where

members of its own police department review themselves. Unsurprisingly, very few Urbana

police officers are disciplined for their misconduct. In this way, Urbana police officers knew that

they may engage in excessive force with impunity.

39.     Urbana and its police department has consistently (1) failed to supervise and conduct

sufficient training with respect to the constitutional limitations on the use of force; (2) failed to

adequately punish officers who have committed excessive force; (3) tolerated the use of

excessive force against its citizens; and (4) encouraged collusive statements by involved officers

in excessive force incidents.

40.     As a direct and proximate result of the wrongful conduct of Defendant Officers and

Urbana, Plaintiff has been seriously injured. Notwithstanding his physical injuries, Plaintiff also

continues to suffer ongoing emotional distress, including anxiety, stress, and trouble sleeping in

fear of another attack by law enforcement for something as small as a traffic violation.

## COUNT I
### 42 U.S.C. § 1983: Excessive Force
### (Against Defendants Pankow, Wright, Yeagle, and Fink)

41.     Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

7

42.     As stated more fully above, Defendant Officers' actions of punching, pushing, and tackling Plaintiff constituted excessive force.

43.     The misconduct described above was objectively unreasonable in light of the facts and circumstances confronting Defendant Officers and was undertaken intentionally and deliberately for the purpose of harming Plaintiff.

44.     Defendant Officers acted under color of state law in their capacity as Urbana police officers and their actions were conducted within the scope of their employment.

45.     Under 42 U.S.C. § 1983, a person who, acting under color of state law, deprives another person of his federal constitutional rights is liable to the injured party.

46.     Plaintiff had a clearly established constitutional right under the Fourth and Fourteenth Amendments to be free from excessive force by law enforcement.

47.     Any reasonable officer knew or should have known of these rights at the time of the conduct complained of as they were clearly established at that time.

48.     The actions of Defendant Officers constituted unreasonable and unjustifiable excessive force against Plaintiff, thus violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

49.     As a result of the excessive force used by Defendant Officers, Plaintiff suffered physical and emotional injuries, and other damages in violation of 42 U.S.C. § 1983.

**COUNT II**
**42 U.S.C. § 1983: Excessive Force**
**(Against Defendants Pankow, Wright, Yeagle, and Fink)**

50.     Plaintiff hereby incorporates all preceding paragraphs as through fully set forth herein.

51.     As described more fully above, Defendant Officers, while acting under color of law and within the scope of their employment, during the constitutional violations described herein, stood

8

by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

52.     The misconduct described and incorporated in this Count was objectively unreasonable and was undertaken intentionally, and with willful indifference to Plaintiff's clearly established constitutional rights.

53.     As a direct and proximate result of Defendant Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional pain and suffering.

## COUNT III
### Intentional Infliction of Emotional Distress
### (Against Defendants Pankow, Wright, Yeagle, and Fink)

54.     Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

55.     Defendant Officers' actions of punching, pushing, and tackling an unarmed person and then handcuffing Plaintiff after he broke his wrist and did not pose a threat was extreme and outrageous.

56.     Defendant Officers engaged in the extreme and outrageous conduct with wanton and reckless disregard of the probability of causing Plaintiff to suffer severe emotional distress.

57.     As a direct and proximate result of Defendant Officers' extreme and outrageous conduct, Plaintiff suffered mental anguish and extreme emotional distress.

## COUNT IV
### Respondeat Superior
### (Against Defendant City of Urbana)

58.     Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

59.     At all relevant times hereto, Defendant Officers were or are employees of Urbana, Illinois.

9

60.      Urbana is liable for its employees' actions under the doctrine of *respondeat superior*.

61.      Defendant Officers were acting within the scope of their employment when they willfully and wantonly committed the misconduct described above.

62.      Urbana is liable as principal for all torts committed by its agents.

**COUNT V**
**Statutory Indemnification**
**(Against Defendant City of Urbana)**

63.      Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

64.      Urbana is the employer of Defendant Officers.

65.      Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

66.      Defendant Officers is or were employees of Urbana, who acted under color of law and within the scope of their employment in committing the misconduct described above.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against Defendants Corey Pankow; Colby Wright; Jonathan Yeagle; Bryan Fink and the City of Urbana, and that he be granted compensatory damages, and where applicable, punitive damages, as well as an award of costs and attorneys' fees, and such other relief this Court deems equitable and just.

**JURY DEMAND**

Plaintiff hereby requests a trial by a jury pursuant to Federal Rule of Civil Procedure 38(b) for all issues so triable.

Dated: May 26, 2021

                                              Respectfully submitted,

_/s/ Shneur Nathan, Att No. 629445_
Shneur Nathan
Avi Kamionski
Matthew J. Mc Carter
Nathan & Kamionski LLP
33 West Monroe, Suite 1830
Chicago, Illinois 60603
(312) 612-1943
mmccarter@nklawllp.com